United States of America,        )
                                  )
              Plaintiff,          )
                                  )
       v.                         )
                                  )   No. CR—10-0048 DLJ
Martin Ramirez Segundo,           )
                                  )   **ORDER**
              Defendant.          )
_____   )

On September 24, 2010, defendant Martin Ramirez Segundo(Ramirez)filed several motions including a Motion for Severance.  On October 22, 2010 this Court held a hearing on the matters.  Attorneys John Cooke and James Mann appeared on behalf of the United States and defendant Ramirez was represented by Attorney Joyce Leavitt.  At the hearing, the Court indicated that it would deny the motion but without prejudice for defendant to make a greater showing on the issue of the evidence he alleged his co-defendant would present at a later trial.

On November 5, 2010, defendant filed a renewed motion for severance accompanied by a declaration filed under seal by co-defendant Flores.  The Court held a further hearing on the matter on November 12, 2010.  Having considered the arguments of the parties, the Court enters the following order on the Motion to Sever.

**I.  BACKGROUND**

The following facts are taken from defendant's motion. In July 2008, based on information provided by a confidential informant, law enforcement officers began investigating Alfonso Flores and Magdaleno Ceja, Ramirez's co-defendants in this

1  case, for selling cocaine. Between March and December 2009, the
2  informant made multiple controlled buys from Flores and Ceja at
3  a residence on Barrett Avenue in Richmond, California.

4  According to the discovery provided by the government,
5  there is no evidence that Ramirez was involved in any of the
6  negotiations leading up to these transactions or the
7  transactions themselves. None of the law enforcement reports of
8  these controlled buys or the surveillance mentions Ramirez.

9  On December 22, 2009, law enforcement officers obtained
10 a search warrant for the Barrett Avenue residence and for the
11 persons of Ceja and Flores. See Search Warrant, attached
12 as Exhibit A to defendant's motion. The warrant did not
13 authorize the seizure or search of Ramirez. Id.

14 On December 29, 2009, the informant and an undercover
15 officer made arrangements with Flores to buy cocaine from him
16 at the residence. See December 29, 2009, Investigation Report
17 (Barrientos), attached as Exhibit B to defendant's Motion.
18 At approximately 3:00 p.m., the informant and the officer drove
19 up to the residence.  Ceja approached their vehicle and
20 directed the informant to tell the officer to park across the
21 street. Id. Flores then came over to the vehicle and told the
22 informant that he did not have the cocaine but his supplier was
23 en route. Id.

24 Ramirez, during this time, was standing in front of the
25 driveway of the residence with Ceja. Id.  Flores walked out of
26 the view of the undercover officer and then returned to the
27 vehicle. Id. The informant got into the back seat of the

2

vehicle and let Flores sit in the front passenger seat. Id. The undercover officer asked Flores if he had the cocaine. Id. Flores said that he did and pulled a brown paper bag from inside his coat. Id. Flores showed the cocaine to the officer, who asked Flores if he wanted to count the money. Id. Flores told the officer to give the money to "Guero" to count and gestured towards Ceja, who was standing in front of the driveway. Id.

After Flores asked the officer if the $24,000 was all there, Flores was arrested. Id. When officers approached the Barrett Avenue residence to conduct the warrant search, Ceja ran into the house and tried to flush cocaine down the toilet. See December 29, 2009, Investigation Report (Domenici), attached as Exhibit C.

Ramirez was standing next to an open rear gate of the residence. Id. at ¶3. An officer handcuffed him. Id. When one officer handed Ramirez to another officer and said that he had not been searched, Ramirez told the officer that he had a gun. Id. An officer searched him and found a gun in his waistband. Id.

During a later booking search, another officer found .48 grams of cocaine in Ramirez's pocket. Id. at ¶ 20.

**II. Legal Standard**

"There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.'" Zafiro v. United States, 506 U.S. 534, 537 (1993). "[J]oint trials of

3

persons charged with committing the same offense expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon citizens to sacrifice time and money to serve on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." United States v. Brady, 579 F.2d 1121, 1128 (9th Cir. 1978).

"The general rule is that persons jointly indicted should be jointly tried absent compelling circumstances." United States v. Silla, 555 F.2d 703, 707 (9th Cir. 1977). Where a conspiracy is charged, as in this case, a joint trial is "particularly appropriate." United States v. Freeman, 6 F.3d 586, 598 (9th Cir. 1993).

A court may sever a defendant for separate trial but should do so "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.

**III. Discussion**

Ramirez's counsel asserts that he needs a separate trial because his co-defendant Flores has "substantially exculpatory" testimony which would only be available to Ramirez in a separate trial. Ramirez states that Flores could testify that he "was not involved" in the drug offenses with which he is charged. See Leavitt Decl. ¶ 4. In his reply brief to the original motion, Ramirez indicates that Flores could confirm

4

defendant's position that he was at the house to repair the refrigerator, that he carried a gun because he had been robbed previously and that the cocaine was for his personal use. Subsequent to the hearing on this case, defendant filed as part of his renewed motion, a declaration under seal from Flores wherein Flores explained in greater detail what the substance of his testimony would be.

When the reason for severance is the need for a co-defendant's testimony, the threshold showing required of a defendant is (1) that he would call the co-defendant at a severed trial, (2) that the co-defendant would in fact testify; and (3) that the testimony would be favorable to the moving party. United States v. Reese, 2 F.3d 870, 892 (9th Cir. 1993); United States v. Hernandez, 952 F.2d 1110, 1115 (9th Cir. 1991); United States v. Castro, 887 F.2d 988, 998 (9th Cir. 1989).

The parties disagree on the appropriate standard to apply in reviewing the level of evidence needed for the Court to find severance appropriate. The defendant argues that the evidence must merely be favorable, as stated in the cases cited above. The government argues that the evidence must be more than favorable, it must be "substantially exculpatory." United States v. Pitner, 307 F.3d 1178, 1181 (9th Cir. 2002)("to succeed in his appeal . . ., Pitner must show. . . that the testimony would [have been] . . . substantially exculpatory"); Reese, 2 F.3d at 892; United States v. Mariscal, 939 F.2d 884, 886 (9th Cir. 1991).

5

The Court has reviewed the evidence presented by defendant and finds that it would be admissible as percipient witness testimony, and that it would be available to defendant if the cases were severed. Defendant concedes that the proffered evidence must be exculpatory to some degree, but argues that under applicable precedent it need not be "substantially exculpatory," as argued by the government. If this were a close case it may have been necessary for the Court to resolve this issue, but this is not a close case. In this case there is no question but that the factual proffer is "substantially exculpatory." See e.g. United States v. Taren-Palma, 997 F.2d 525, overruled on other grounds by United States v. Shabani, 513 U.S. 10, 11 (1994).

**IV. Conclusion**

Defendant has presented sufficient relevant admissible evidence to demonstrate that were his case to be severed for a separate subsequent trial, his co-defendant would testify in defendant's favor at a later trial, and that the evidence the co-defendant would present would be substantially exculpatory. Therefore, Defendant's Motion for Severance is GRANTED.

IT IS SO ORDERED.

Dated: November 19, 2010

_____
D. Lowell Jensen
United States District Judge